```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/30/2021
```

Monet Punter-Spencer,

                              Plaintiff,

          -against-

Charles E. Irving et al.,

                              Defendants.

**1:18-cv-01959 (SDA)**

**OPINION AND ORDER**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE:**

In September 2020, this personal injury action was settled, with Plaintiff Monet Punter-Spencer ("Plaintiff") recovering the sum of $1,250,000 from Defendants Charles S. Irving and Transport Company of America, Inc. (collectively, "Defendants"). Although Plaintiff has received the money to which she is entitled under the settlement, a dispute remains outstanding between Plaintiff's present and former attorneys concerning the proper allocation between them of the contingent legal fee. Plaintiff's original counsel, the law firm Schulman Blitz, LLP ("Schulman Blitz"), was replaced toward the end of discovery by the law firm Sobo & Sobo, LLP ("Sobo & Sobo"). Collectively, Plaintiff's counsel is entitled to one-third of Plaintiff's net recovery—$416,666.67—as a contingent fee. Schulman Blitz asserts that it is entitled to 95% of that contingent fee, to Sobo & Sobo's 5%. Sobo & Sobo maintains that it should receive 60%, to Schulman Blitz's 40%.

On January 27, 2021, I held a remote hearing on the issue via Zoom. Having taken account of all relevant evidence, including the credibility of the witnesses who testified at the hearing, for the reasons set forth below, I now rule that Schulman Blitz shall receive 80%, and Sobo & Sobo 20%, of the contingent fee.

**BACKGROUND**

I.    **Procedural History**

As alleged in the Complaint, Plaintiff was injured on March 2, 2017 when a truck operated by Defendants struck her car on northbound Interstate 87 in the Village of Chestnut Ridge, New York. (*See* Compl., ECF No. 1-1, ¶¶ 33, 37, 40.) On March 22, 2017, Plaintiff retained Schulman Blitz to represent her in connection with injuries and other damages she sustained in the accident. (Affidavit of Frederick A. Schulman, sworn to October 19, 2020 ("Schulman Aff."), ECF No. 77, ¶ 4.) In December 2017, Plaintiff, through Schulman Blitz, commenced this lawsuit by filing a Complaint against Defendants in the Supreme Court of the State of New York, Bronx County, asserting claims of negligence; vicarious liability; and negligent hiring, training and retention. (*See id.* ¶ 38(m); Compl. ¶¶ 36-56.) In March 2018, Defendants removed the action to this Court on the basis of diversity jurisdiction. (*See* Not. of Removal, ECF No. 14, at 1; Pet. for Removal, ECF No. 15, ¶ 12.) The action was assigned to Judge Jesse M. Furman.

Over the next 18 months, with Plaintiff represented by Schulman Blitz, the action proceeded through fact discovery and into expert discovery, with the parties seeking, and Judge Furman granting, several extensions of discovery deadlines. (*See* Orders, ECF Nos. 21, 24, 26, 30, 35.) On October 23, 2019, Judge Furman declined to further extend those deadlines; at that time, fact discovery was scheduled to close on November 8, 2019, and expert discovery on January 3, 2020. (*See* Order, ECF No. 39.)

In November 2019, the parties participated in two unsuccessful private mediations, at which Schulman Blitz represented Plaintiff. (*See* Schulman Aff. ¶ 38(jjj); Affidavit of Robert E.

Borrero, sworn to November 4, 2020 ("Borrero Aff."), ECF No. 84, ¶ 4; 12/2/19 Letter, ECF No. 46, at 1.)

On December 2, 2019, Frederick Schulman of Schulman Blitz filed to the ECF docket a letter to Judge Furman asserting that the prior month's mediations had "failed primarily because issues have arisen which prevent my law firm from continuing to represent the plaintiff" and requesting leave to move to withdraw as Plaintiff's counsel. (*See* 12/2/19 Letter at 1.) On December 6, 2019, having been granted leave, Schulman Blitz filed a formal motion to withdraw, which Judge Furman granted on December 20, 2019. (*See* ECF Nos. 48, 50.)

Plaintiff first "sought to retain" Sobo & Sobo as her new counsel on December 16, 2019. (Borrero Aff. ¶ 4.) She retained Sobo & Sobo on or around January 2, 2021. (Tr. at 46.)[1] On January 13, 2020, Schulman Blitz and Sobo & Sobo entered into a Stipulation providing that Schulman Blitz "shall retain a lien on the net attorneys' fees upon the disposition of this matter," and that "[t]he amount of said lien shall be deferred to the time of settlement," at which time, if counsel could not agree on the amount of the lien, "a fee hearing is to be scheduled before the Court for the determination of said lien." (1/13/20 Stip., ECF No. 77-4, at 2.)[2] Thereafter, in mid-January, 2020, Sobo & Sobo appeared in this action on behalf of Plaintiff and filed a Notice of Substitution of Attorney. (*See* ECF Nos. 54, 55.)

---

[1] Citations to "Tr." are to the transcript of the January 27, 2021 remote hearing, available at ECF No. 102.

[2] The Stipulation also provided that Sobo & Sobo would "immediately remit to [Schulman Blitz] a check for its disbursements in the sum of $44,167.43," and that, on receipt of that check, Schulman Blitz would "immediately transfer their file to [Sobo & Sobo]." (1/13/20 Stip. at 1.) There has been no contention that either firm failed to discharge these obligations.

At a third mediation held on September 17, 2020, at which Sobo & Sobo represented Plaintiff, the case settled for $1,250,000. (*See* Schulman Aff. ¶ 48; Borrero Aff. ¶ 15.) It is undisputed that the total attorneys' fees resulting from this settlement is one-third of that total amount, or $416,666.67.  (*See* Schulman Aff. ¶ 3; 10/30/20 Order, ECF No. 83, at 1.)

On October 19, 2020, following "[s]erious attempts at a negotiated apportionment" of that sum, Shulman Blitz filed an affidavit with supporting documentation asserting its entitlement to "not less than 95% of the attorneys' fees." (Schulman Aff. ¶ 69.) On October 21, 2020, Judge Vyskocil, to whom the case had been reassigned in February 2020 (*see* ECF No. 59), referred this fee dispute to me. (*See* Order of Reference, ECF No. 78.) On October 23, 2020, I held a telephonic conference with the parties, at the conclusion of which I imposed deadlines for Sobo & Sobo to file a responsive affidavit and for the parties to propose available dates for a remote hearing. (*See* 10/23/20 Order, ECF No. 80.)

On October 27, 2020, the parties consented to my jurisdiction for all purposes. (*See* Consent, ECF No. 81.) On October 30, 2020, I entered an order permitting Defendants to pay the full $1,250,000 settlement amount to Sobo & Sobo and "directing Sobo & Sobo to keep $416,666.67 in escrow until the issue of attorney's fees is resolved by mutual agreement or Court Order." (*See* 10/30/20 Order.) On November 4, 2020, Sobo & Sobo filed its responsive affidavit with supporting documentation, asserting its position that "an appropriate apportionment would be 60%-40% in favor of [itself]." (*See* Borrero Aff. ¶ 10.)

On January 27, 2021, I held a remote hearing via Zoom on the issue of apportionment of the attorneys' fees. Testifying on behalf of Schulman Blitz were Fred Schulman of Schulman Blitz and Bryan Schacter of ESS Settlement Services, a structured settlement consultant who advised

Plaintiff in this case and was present for the first two mediations. Testifying on behalf of Sobo & Sobo were Robert Borrero of Sobo & Sobo and Anne Marie Garcia of Gallo Vitucci Klar, LLP, counsel to Defendants in the underlying action.

## II. <u>Schulman Blitz's Services</u>

Schulman Blitz represented Plaintiff from March 22, 2017 through December 20, 2019, a total of 1,004 days. (*See* Schulman Aff. ¶ 35.) In his Affidavit, Mr. Schulman provides a lengthy list of the work done by Shulman Blitz prior to its withdrawal, including: pre-complaint factual investigation and analysis (*see id.* ¶ 38(a)-(l)); preparation, service and filing of the Summons and Verified Complaint (*see id.* ¶ 38(m)-(n)); pre-removal preparation and service of discovery demands, discovery responses and Bills of Particulars (*see id.* ¶ 38(o)-(r)); pre-removal preparation, service and filing of a motion for summary judgment on the issue of liability (*see id.* ¶ 38(s)); post-removal preparation, service and supplementation of Initial Disclosures and discovery requests and responses (*see id.* ¶ 38(t), (v)-(x), (ff)-(tt), (eee)); review of Defendants' document and video productions (*see id.* ¶ 38(z), (eee)); noticing, preparing for and taking ten depositions, including the corporate defendant's 30(b)(6) deposition and two expert depositions (*see id.* ¶ 38(aa)-(ee)); engaging and preparing the disclosures of three experts (*see id.* ¶ 38(uu)-(xx)); reviewing Defendants' expert reports (*see id.* ¶ 38(bbb)); preparing for and participating in two mediations (*see id.* ¶ 38(fff)-(jjj)); and generally interfacing with Plaintiff, the Court, Defendants' counsel and others. (*See id.* ¶ 38(u), (yy)-(aaa), (ccc)-(ddd), (ggg)-(iii)).

Sobo & Sobo does not dispute any of the work Schulman Blitz claims to have performed on Plaintiff's behalf. To the contrary, Sobo & Sobo acknowledges that Schulman Blitz "did a great deal of work on the case," including "most of discovery." (Borrero Aff. ¶¶ 3, 4; *see also* Tr. at 28

(Mr. Borrero's testimony) ("I think the record is replete simply with my position that the bulk of the time spent on preparing this case was done by [Schulman Blitz].").)

Despite having been retained on a contingency basis, Schulman Blitz kept time records of its work on the Plaintiff file. In an exhibit to the Schulman Affidavit, Schulman Blitz provides a spreadsheet tabulating 632.5 hours spent on the case between March 23, 2018 and January 9, 2020. (*See* Schulman Aff. Ex. E, ECF No. 77-5.)

Schulman Blitz represented Plaintiff at two unsuccessful November 2019 private mediation sessions with Richard Byrne of National Arbitration and Mediation, Inc. (Schulman Aff. ¶¶ 38(jjj), 42.) The highest "official" offer made to Plaintiff during these mediations was $250,000. (Tr. at 12; Borrero Aff. ¶ 5.) Schulman Blitz contends, however, that "at both of those mediations, Mr. Byrne indicated to [Schulman Blitz] that [D]efendants would be willing to settle the case for an amount in the range of $1 million to $1.5 million," and that Schulman Blitz "urged [Plaintiff] to consider a settlement offer in that range," but that "[P]laintiff was not interested in a settlement offer in th[at] range," which "resulted in the failure of these two [] mediations." (Schulman Aff. ¶¶ 41-42; *see also* Tr. at 38.) At the January 27, 2021 remote hearing in this case, both of Schulman Blitz's witnesses testified that, during each of the first two mediations, Plaintiff at some point represented to Schulman Blitz and to the mediator that she would be willing to accept a settlement amount of $1.5 million, only to change her mind, demand $3 million, have an emotional "meltdown," and storm out. (*See* Tr. at 62, 64-65, 75.)

Subsequent to the second failed mediation, Schulman Blitz asserts, "[a]fter a great deal of discussions" with Plaintiff, "it became apparent" that Schulman Blitz and Plaintiff "now had

irreconcilable differences," which differences "led to [Schulman Blitz]'s application to the court to withdraw." (Schulman Aff. ¶¶ 43-44.)

### III. Sobo & Sobo's Services

Sobo & Sobo represented Plaintiff from on or around January 2, 2020 through September 17, 2020, a total of approximately 259 days. (*See* Tr. at 46; Schulman Aff. ¶ 35.)

After appearing on behalf of Plaintiff in mid-January 2020, Sobo & Sobo prepared for and defended three depositions that had been arranged for, coordinated and scheduled by Shulman Blitz. (*See* Borrero Aff. ¶¶ 6, 12; Schulman Aff. ¶¶ 45, 46.)[3] Sobo & Sobo then prepared for and participated in the third, decisive mediation. (*See* Borrero Aff. ¶ 15; Schulman Aff. ¶ 47.) There, Sobo & Sobo, asserts, it "was able to increase [Defendants'] prior [settlement] offer of $250,000.00 to $1,250,000.00." (Borrero Aff. ¶ 15.)

Sobo & Sobo asserts that it "would have prepared for trial" if this third mediation had failed, whereas, it asserts, Schulman Blitz's withdrawal demonstrates that that firm "did not intend to prepare for trial." (Borrero Aff. ¶¶ 5, 12, 15.) Sobo & Sobo contends that this contrast in appetite for trial was responsible for the significant raise in Defendants' settlement offer. (*See id.* ¶ 12.)

Sobo & Sobo did not keep detailed time records of its representation of Plaintiff. (*See* Tr. at 28.) However, it did keep contemporaneous "notes" of its communications with Plaintiff, with opposing counsel and with other third parties on behalf of Plaintiff. (*See* Contemporary Notes,

---

[3] There is some ambiguity in the record as to whether Sobo & Sobo participated in a total of three or four depositions. (*Compare* Borrero Aff. ¶¶ 6, 12 (asserting that Sobo & Sobo defended three expert depositions); Schulman Aff. ¶¶ 45, 46 (asserting that Sobo & Sobo participated in three depositions) *with* Tr. at 29 (Mr. Borrero confirming that he "defended three depositions and did a nonparty deposition").)

ECF No. 97.) Mr. Borrero estimated that Sobo & Sobo spent "maybe a hundred hours" representing Plaintiff in connection with the action. (Tr. at 28.)

**LEGAL STANDARDS**

Under New York law, when a client has no financial interest in the outcome of a fee dispute, the outgoing attorney may elect to receive "a contingent percentage fee based on the proportionate share of the work performed on the whole case." *Lai Ling Cheng v. Modansky Leasing Co.,* 73 N.Y.2d 454, 458 (1989).[4] "In assessing each firm's proportionate contribution, [the court should] focus on the time and labor spent by each, the actual work performed, the difficulty of the questions involved, the skills required to handle the matter, the attorney's skills and experience, and the effectiveness of counsel in bringing the matter to resolution." *Foppiano v. City of New York*, No. 00-CV-07968 (FM), 2002 WL 31202716, at *4 (S.D.N.Y. Sept. 25, 2002) (brackets in original) (quoting *Buchta v. Union-Endicott Centr. Sch. Dist.,* 296 A.D.2d 688, 689-90 (3d Dep't 2002)).

**DISCUSSION**

Although the Schulman Blitz attorneys have distinguished themselves reputationally and otherwise (*see* Tr. at 43-45), both law firms in this dispute appear to have substantial experience in the personal injury area, and neither firm has offered a compelling argument that its attorneys were more skillful or experienced, or handled more difficult questions, than the other's in the context of this case. Further, Defendants' counsel testified that the relative reputation of the two

---

[4] "Several courts in this district have concluded that courts should apply state law governing attorneys'-fee matters when considering fee disputes in diversity cases," *Borg v. 86th & 3rd Owner, LLC*, No. 08-CV-05913 (RJH), 2012 WL 234383, at *6 (S.D.N.Y. Jan. 24, 2012), and, in any event, the parties rely on New York law in their submissions.

firms was irrelevant to Defendants' settlement decisions. (*See* Tr. at 26.) "The key issue therefore is: how much work did each firm perform and how effective was that work?" *Foppiano*, 2002 WL 31202716, at *4.

By virtually every quantifiable metric, Shulman Blitz's contribution to the prosecution of Plaintiff's case far outweighed that of Sobo & Sobo. Shulman Blitz's representation of Plaintiff (approximately thirty-one months) was nearly four times as long as Sobo & Sobo's (approximately eight); Shulman Blitz participated in ten depositions to Sobo & Sobo's three (or possibly four) and two mediations to Sobo & Sobo's one; and Schulman Blitz recorded approximately 630 hours worked on the case, whereas Sobo & Sobo's estimates it worked "maybe a hundred." Moreover, it is undisputed that Schulman Blitz performed the substantial majority of the actual work involved. (*Compare* Schulman Aff. ¶ 38 (itemizing work performed in more than 60 subparagraphs, spanning more than seven pages) *with* Borrero Aff. ¶ 15 (summarizing work performed in single paragraph); *see also* Borrero Aff. ¶ 4 (acknowledging that Schulman Blitz handled "most of discovery"); Tr. at 32-35 (comparing work performed by the firms).) While Sobo & Sobo contends that it "would have prepared for trial" had the need arisen (Borrero Aff. ¶¶ 5, 12), such hypothetical willingness to work is hardly "actual work performed." *Foppiano*, 2002 WL 31202716, at *4.

On the other hand, from a results-oriented perspective, Sobo & Sobo's work on behalf of Plaintiff, albeit more limited than that of Schulman Blitz, objectively was more "effective." While Schulman Blitz urges the Court to follow the lead of several decisions awarding 95% (or more) of a contingent fee award to the firm that performed the lion's share of the "actual work" (*see* Schulman Aff. ¶¶ 57-66), such an apportionment is inappropriate here, where Sobo & Sobo was

the firm responsible for actually taking the dispute across the finish line and achieving a favorable resolution. *See, e.g.*, *Buchta*, 296 A.D.2d at 690 (in apportioning contingent fee among three firms, awarding 25% to firm that conducted all discovery, 65% to firm that "vigorously pursued plaintiff's claim and achieved a substantial settlement" and 10% to third firm). Indeed, at the January 27, 2021 remote hearing, Schulman & Blitz acknowledged that Plaintiff was emotional and not an easy client, and that Sobo & Sobo deserves some credit both for taking on such a challenging client, and for persuading her to accept the ultimate settlement amount. (*See* Tr. at 71-72.) The Court gives Sobo & Sobo some further credit for the substantial settlement they were able to secure amidst the challenging circumstance of the COVID-19 pandemic, which one would expect to have exerted downward pressure on Defendants' offer. (*See id.*) Accordingly, the Court finds in its discretion that 5% would not adequately compensate Sobo & Sobo for successfully moving the proverbial ball across the goal line.[5]

The Court also is mindful of Schulman Blitz's decision to, in Sobo & Sobo's words, "abandon[] Plaintiff rather than prepare for trial." (*See* Borrero Aff. ¶ 3.) Such behavior risks leaving a party high and dry—especially when withdrawal occurs late in the litigation lifecycle, as it did here. Wary of incentivizing such behavior, the Court is reluctant to award outgoing counsel an amount only slightly discounted from the full contingent fee amount.

---

[5] In none of the cases cited by Schulman Blitz does a court grant 5% or less of a contingency fee to an incoming counsel that was responsible for settling the case. To the contrary: in eight of the nine cases Schulman Blitz cites, it is the *incoming* counsel to which the court apportions 95% or more of the fee, and in the sole decision cited in which the court awarded the bulk of the fee to outgoing counsel, that firm had prosecuted the plaintiff's case to a $1,800,000 verdict. *See Podbielski v. KMO 361 Realty Assocs.*, 6 A.D.3d 597, 597-98 (2d Dep't 2004) (apportioning fee between "outgoing" trial counsel and "incoming" counsel that had merely "offered assistance and advice to appellate counsel during the course of the appeal").

As the United States Supreme Court has said in a related context, trial courts are not "green-eyeshade accountants," and "[t]he essential goal" of a court ruling on fee disputes "is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011); *see also Foppiano*, 2002 WL 31202716, at *5 ("Scientific precision is, of course, impossible in determining how to allocate a contingency fee."). Here, after due consideration of all relevant factors, I find rough justice is done by awarding Schulman Blitz 80% and Sobo & Sobo 20% of the contingent fee.

## CONCLUSION

For the reasons set forth above, Sobo & Sobo is directed to remit to Schulman Blitz the sum of $333,333.34, equal to 80% of the contingent fee received in connection with this action, within ten days of entry of this Order.

**SO ORDERED.**

DATED:      New York, New York
             January 30, 2021

_____
STEWART D. AARON
United States Magistrate Judge